**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

|  |  |  |
|---|---|---|
| LAURA PETERS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:19-cv-00874-GMN-EJY |
| vs. | ) | |
| | ) | **ORDER** |
| SWIFT TRANSPORTATION CO. OF | ) | |
| ARIZONA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

Pending before the Court is the Motion for Partial Summary Judgment, (ECF No. 78),

filed by Defendant Swift Transportation Co. of Arizona, LLC ("Defendant").  Plaintiff Laura

Peters ("Plaintiff") filed a Response, (ECF No. 81), to which Defendant filed a Reply, (ECF

No. 82).

Further pending before the Court is Defendant's Motion to Dismiss, (ECF No. 83).

Plaintiff filed a Response, (ECF No. 84), to which Defendant filed a Reply, (ECF No. 85).

For the reasons discussed below, the Court **GRANTS** Defendant's Motion for Partial

Summary Judgment and Motion to Dismiss.[1]

---

[1] Defendant's Motion to Dismiss argues that Plaintiff has failed to substitute the unnamed fictious defendants with named parties, and the deadline to amend the complaint and add parties has since expired. (Mot. Dismiss ("MTD") 3:1–9, ECF No. 83).  Therefore, Defendant contends that the unnamed fictious defendants should be dismissed from the action. (*Id.*).  Plaintiff does not contest this argument. (Resp. MTD 2:1–18, ECF No. 84). Instead, Plaintiff requests that the Court find that the dismissal of the fictious defendants does not affect the evidence Plaintiff may introduce at trial in presenting her case. (*Id.* 4:3–5:27).  To the extent that Plaintiff seeks to establish the contours of what evidence may be introduced at trial, the Court considers this argument premature.  At this stage in the litigation, the parties have "not yet determined what evidence they intend to use at trial because the[y] . . . have yet to prepare and file a proposed joint pretrial order." *Kennedy v. Las Vegas Sands Corp.*, No. 2:17-cv-880, 2019 WL 2270589, at \*4 (D. Nev. May 28, 2019); *Antoninetti v. Chipotle Mexican Grill, Inc.*, Nos. 05-cv-1660-J (WMc), 06-cv-2671 (WMc), 2007 WL 3333109, at \*3 (S.D. Cal. Nov. 8, 2007).  Therefore, the Court declines to definitively rule on what evidence may be introduced versus excluded at trial.  As Plaintiff does not otherwise contest Defendant's Motion to Dismiss, the Court DISMISSES all claims against the unnamed fictious defendants without prejudice. *See Loggins v. Las Vegas Metropolitan Police Dept.*,

## I.    BACKGROUND

This case arises from a collision between an automobile and a truck which occurred on the Interstate 15 Freeway near the Sahara Avenue off ramp in Clark County, Nevada. (Compl. ¶ 7, Ex. B to Pet. Removal, ECF No. 7-2); (Traffic Crash Report at 3, Ex. 1 to Partial MSJ, ECF No. 78-1).  Plaintiff was the driver of the automobile. (Compl. ¶¶ 7–8, Ex. B to Pet. Removal). Defendant is the company which employed the truck-driver that crashed into Plaintiff. (*Id.*, Ex. B to Pet. Removal).  Defendant's employee "failed to stop at the scene of the incident and drove away without exchanging information with Plaintiff." (*Id.* ¶ 10, Ex. B to Pet. Removal). Plaintiff was taken by ambulance to a nearby hospital, (*see generally* Las Vegas Fire and Rescue Records, Ex. 3 to Resp. Partial MSJ, ECF No. 81-4), and has since underwent numerous surgeries in addition to receiving continuous medical treatment as a result of the injuries she sustained in the accident. (*see generally* Reconstruction, Biochemical & Epidemiological Risk Analysis, Ex. 7 to Resp. Partial MSJ, ECF No. 81-8).

Following the collision, Nevada Highway Patrol ("NHP") initiated an investigation into the accident.  NHP contacted Defendant to inquire about its employee which caused the accident.  NHP spoke with Lou Rose ("Rose"), an employee in Defendant's claim department, but Rose stated that Defendant did not "have any information regarding the semi or driver." (Traffic Crash Report at 3, Ex. 1 to Partial MSJ).  According to the NHP report, Defendant never reported any information to NHP to aid in its investigation. (*Id.*, Ex. 1 to Partial MSJ).

Plaintiff brought suit against Defendant in state court, alleging claims for: (1) negligence/negligence per se; (2) negligent entrustment; and (3) negligent hiring, training, supervision, and policies/procedures. (*Id.* ¶¶ 12–36, Ex. B to Pet. Removal).  Defendant

No. 2:14-cv-01743, 2016 WL 5791543, at *3 (D. Nev. Sept. 30, 2016); *Romero v. Dept. of Corrections*, No. 2:08-cv-808, 2013 WL 6206705, at *4 (D. Nev. Nov. 27, 2013).

1    subsequently removed the case to this Court on the basis of diversity jurisdiction. (Pet.

2    Removal ¶¶ 1–3, ECF No. 7).

3    **II.      LEGAL STANDARD**

4          The Federal Rules of Civil Procedure provide for summary adjudication when the

5    pleadings, depositions, answers to interrogatories, and admissions on file, together with the

6    affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant

7    is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that

8    may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

9    (1986).  A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on

10   which a reasonable fact-finder could rely to find for the nonmoving party. *See id.*  "The amount

11   of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or

12   judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*,

13   718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253,

14   288–89 (1968)).  "Summary judgment is inappropriate if reasonable jurors, drawing all

15   inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's

16   favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).  A principal

17   purpose of summary judgment is "to isolate and dispose of factually unsupported claims."

18   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

19         In determining summary judgment, a court applies a burden-shifting analysis.  "When

20   the party moving for summary judgment would bear the burden of proof at trial, it must come

21   forward with evidence which would entitle it to a directed verdict if the evidence went

22   uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing

23   the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*

24   *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal quotation

25   marks and citations omitted).  In contrast, when the nonmoving party bears the burden of

1   proving the claim or defense, the moving party can meet its burden in two ways: (1) by

2   presenting evidence to negate an essential element of the nonmoving party's case; or (2) by

3   demonstrating that the nonmoving party failed to make a showing sufficient to establish an

4   element essential to that party's case on which that party will bear the burden of proof at trial.

5   *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden,

6   summary judgment must be denied and the court need not consider the nonmoving party's

7   evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

8        If the moving party satisfies its initial burden, the burden then shifts to the opposing

9   party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v.*

10  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute,

11  the opposing party need not establish a material issue of fact conclusively in its favor.  It is

12  sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

13  parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

14  *Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  However, the nonmoving party "may not rely on

15  denials in the pleadings but must produce specific evidence, through affidavits or admissible

16  discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404,

17  1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical

18  doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002)

19  (quotation marks and citation omitted).  "The mere existence of a scintilla of evidence in

20  support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other

21  words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory

22  allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th

23  Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the

24  pleadings and set forth specific facts by producing competent evidence that shows a genuine

25  issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

1    At summary judgment, a court's function is not to weigh the evidence and determine the

2    truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

3    The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn

4    in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is "merely colorable or is

5    not significantly probative, summary judgment may be granted." *See id.* at 249–50 (internal

6    citations omitted).

7    **III.    DISCUSSION**

8    As an initial matter, the parties filed a Stipulation and Amended Order Regarding

9    Negligence, (ECF No. 19), which the Court subsequently granted. (Order, ECF No. 20).

10   Pursuant to the Stipulation, Defendant conceded that it's driver's negligence was the cause of

11   the subject motor vehicle collision, but reserved the right to contest medical causation and all

12   damages. (Am. Stip. 2:1–3:12, ECF No. 19).  Further, Plaintiff has subsequently informed the

13   Court that she is abandoning her claims for negligent entrustment and negligent hiring, training,

14   and supervision. (Resp. Partial MSJ 3:25–28, ECF No. 81).  Thus, the only issues that remain

15   concern Plaintiff's negligence claim, specifically whether there is medical causation connecting

16   the treatment Plaintiff received to the injuries she suffered in the accident, and the extent of

17   damages Defendant may be liable for. (*Id*. 3:13–17).

18   Defendant now moves for partial summary judgment, arguing that Plaintiff is foreclosed

19   from seeking medical damages because she has failed to establish that a causal connection

20   exists between the accident and the injuries she received treatment for, and that punitive

21   damages are inappropriate for Plaintiff's negligence claim. (Partial MSJ 6:5–8:10, 9:24–10:9,

22   ECF No. 78).  The Court discusses each argument in turn.

23   ///

24   ///

25   ///

**A. Medical Damages**

Beginning with the former, Defendant contends that Plaintiff is unable to seek damages related to her medical treatment at Mountain View Hospital, Fremont Emergency Services, and Digestive Associates because there is no causal connection between the accident at issue and this treatment. (*Id*. 10:3–9). In response, Plaintiff raises a limited opposition, explaining that "Plaintiff is amenable to excluding such damages, if this Court orders exclusion of this treatment, including the medical and billing records and any and all references or arguments regarding the same at trial." (Resp. Partial MSJ 3:20–24). Plaintiff further opines that "if the damages are excluded as unrelated to this matter, such information is not relevant to any issue at trial and allowing such evidence would be highly prejudicial to Plaintiff." (*Id*. 3:24–4:2).

Based on Plaintiff's dual contentions that evidence of the damages identified by Defendant should be excluded at trial as unrelated, and that allowing such evidence would be highly prejudicial, the Court construes Plaintiff's argument as a pseudo motion *in limine* pursuant to Federal Rules of Civil Procedure 401 and 403. At this stage in the litigation, however, the parties have "not yet determined what evidence they intend to use at trial because the[y] . . . have yet to prepare and file a proposed joint pretrial order." *Kennedy v. Las Vegas Sands Corp.*, No. 2:17-cv-880, 2019 WL 2270589, at \*4 (D. Nev. May 28, 2019); *Antoninetti v. Chipotle Mexican Grill, Inc.*, Nos. 05-cv-1660-J (WMc), 06-cv-2671, 2007 WL 3333109, at \*3 (S.D. Cal. Nov. 8, 2007) (denying plaintiff's motion *in limine* as premature because defendant has not yet determined what evidence it would introduce at trial). Therefore, the Court considers Plaintiff's motion *in limine* as premature.

As Plaintiff raises no other argument in opposition to Defendant's Motion for Partial Summary Judgment and appears to be otherwise amenable to waiving the issue, the Court GRANTS Defendant summary judgment and finds that Plaintiff is precluded from seeking damages related to her medical treatment at Mountain View Hospital, Fremont Emergency

1   Services, and Digestive Associates because there is no causal connection between the accident

2   at issue and this treatment. *See Kohler v. Inter-Tel Techs.*, 244 F.3d 1167, 1182 (9th Cir. 2001)

3   ("Issues raised in a brief which are not supported by argument are deemed abandoned.");

4   *Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204, 1210 n.4 (9th Cir. 2013) (deeming issue

5   waived where it was not supported by any argument).  Plaintiff may subsequently file a motion

6   *in limine* to exclude the introduction of any and all evidence surrounding the aforementioned

7   medical treatment and records after the parties propose and file a joint pretrial order.

8          **B.  Punitive Damages**

9          In Nevada, "punitive damages may be awarded when the plaintiff proves by clear and

10   convincing evidence that the defendant is 'guilty of oppression[;] fraud[;] or malice, express or

11   implied.'" *Bongiovi v. Sullivan*, 138 P.3d 433, 450–51 (Nev. 2006) (quoting NRS § 42.005(1)).

12   Oppression is "despicable conduct that subjects a person to cruel and unjust hardship with

13   conscious disregards of the rights of the person." NRS § 42.001(4).  Fraud is "an intentional

14   misrepresentation, deception[,] or concealment of a material fact known to the person with the

15   intent to deprive another person of his or her rights or property or to otherwise injure another

16   person." *Id*. at § 42.001(2).  And malice, express or implied, is "conduct [that] is intended to

17   injure a person or despicable conduct [that] is engaged in with a conscious disregard of the

18   rights or safety of others." *Id*. at § 42.001(3); *see also Countrywide Home Loans v. Thitchener*,

19   192 P.3d 243, 255 (Nev. 2008).

20          "When the target of punitive damages is a corporation, and the implied malice comes

21   from an employee, Nevada law prescribes the circumstances under which the employee's

22   conduct can be attributable to the corporation for punitive-damages purposes." *De Freitas v.*

23   *Hertz Corp.*, No. 2:18-cv-01522, 2022 WL 4290327, at *8 (D. Nev. Sept. 16, 2022) (citing

24   NRS § 42.007).  NRS § 42.007 captioned in part "Limitations on liability by employer for

25   wrongful act of employee," permits an employee's conduct to be imputed to the employer if a

corporate "officer, director, or managing agent" (1) "had advance knowledge that the employee was unfit for" the job and hired her "with a conscious disregard of the rights or safety of others," (2) expressly authorized or ratified the wrongful act, or (3) "is personally guilty of oppression, fraud, or malice . . . ." NRS § 42.007(1).  Determining who is a managing agent does not turn on the employee's title as a manager or supervisor. *Nittinger v. Holman*, 69 P.3d 688, 691–92 (2003) (en banc).  "Rather, an employee is a managing agent if the employee has discretion and control over an area of the business sufficient to set policy for the business." *Terrell v. Central Washington Asphalt, Inc.*, 168 F. Supp. 3d 1302, 1319 (D. Nev. 2016) (citing *Nittinger*, 69 P.3d at 691–92).  "Where an employee does not have discretion to deviate from established policy, that employee is not a managing agent." *Id*. (citing *Nittinger*, 69 P.3d at 692).

Here, Defendant argues there is no "competent evidence" demonstrating that it, as the employer corporation, is liable for punitive damages due to the actions of either it or its employee under NRS § 42.007. (Partial MSJ 7:21–8:10).  In response, Plaintiff contends that punitive damages are warranted for two reasons: (1) Defendant's employee fled from the scene after crashing into Plaintiff thereby displaying a "conscious disregard" for her welfare; and (2) that Defendant subsequently impeded NHP's investigation into the accident. (Resp. Partial MSJ 12:20–16:25).  Each of Plaintiff's rationales will be discussed in turn.

### 1.      Defendant's Employee's Hit-And-Run

Plaintiff's first argument suffers from a fatal infirmity—it focuses solely on the conduct of Defendant's employee to the exclusion of any analysis concerning whether Defendant knew its employee driver was unfit for the job and hired them with a conscious disregard of the rights or safety of others, expressly authorized or ratified the wrongful act, or is personally guilty of

///

///

1    oppression, fraud, or malice. (Resp. Partial MSJ 12:20–15:1).  With the dismissal of the

2    unnamed fictious defendants, there is only one remaining defendant, Defendant Swift

3    Transportation Co. of Arizona, LLC, a corporation.  Even assuming that a reasonable jury

4    could conclude that Defendant's employee engaged in despicable conduct with a conscious

5    disregard for the safety of others, that is not enough to hold Defendant, as the employer, liable

6    for punitive damages pursuant to NRS § 42.007.

7           Here, Plaintiff has provided no evidence demonstrating that Defendant had reason to

8    believe that its employee was unfit for employment, that it expressly authorized or ratified the

9    employee's negligent behavior, or is personally guilty of oppression, fraud, or malice. *See*

10   *Wright v. Watkins and Shepard Trucking, Inc.*, 2:11–CV–01575, 2014 WL 6388789, *6-7 (D.

11   Nev. Nov. 14, 2014) (despite evidence of "written warnings" for driver's "prior violations of

12   company rules," and that a trainer during a training session told driver to "use additional

13   caution if he approached an accident scene or a vehicle pulled over to the side of the road,"

14   finding "no evidence on which a reasonable jury could find that" employer negligently hired or

15   trained driver "with a conscious disregard of the safety of others," and "no evidence" that

16   employer that "ratified" driver's "conduct or acted with malice in conscious disregard for the

17   safety of others," and thus granting summary judgment on direct punitive damages claim

18   against employer); *Matlock v. Greyhound Lines, Inc.*, No. 2:04-cv-00051, 2007 WL 9725241,

19   at *6 (D. Nev. Sept. 19, 2007) ("Plaintiffs have failed to demonstrate that Greyhound has

20   reason to believe that Fretwell was unfit for employment, that Greyhound is personally guilty

21   of oppression, fraud, or malice, or that Greyhound expressly authorized or ratified Fretwell's

22   alleged negligent behavior.").  Therefore, Plaintiff's first theory fails to demonstrate

23   circumstances justifying punitive damage factors pursuant to NRS § 42.007.

24   ///

25   ///

### 2.   Defendant's Alleged Impediment of NHP's Investigation

Plaintiff's second theory for punitive damages is based on its contention that Defendant "blocked NHP's ability to investigate this matter[.]" (Resp. Partial MSJ 16:8–12).  The sole evidence provided by Plaintiff in support of her theory is the NHP Traffic Crash Report which shows that NHP contacted Defendant on several occasions to inquire about its employee which caused the accident, and never received any information from Defendant on the semi or driver. (Id. 16:13–25); (Traffic Crash Report at 3, Ex. 1 to Partial MSJ).  The difficulty here is that even construing the NHP Traffic Crash Report in the light most favorable to Plaintiff, this piece of evidence, standing alone, fails to demonstrate that Defendant either actively or even actually impeded the investigation.  In the absence of additional evidence, Plaintiff's theory is based on pure speculation and fails to demonstrate any of the enumerated conditions for punitive damages codified in NRS § 42.007.  And "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 32.

Alternatively, Plaintiff states that punitive damages are warranted based on the "expert witnesses and fact witnesses" that Plaintiff will present at trial.  However, "'[a] genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial.'" *Ramos v. FCA US LLC*, 385 F. Supp. 3d 1056, 1065 (E.D. Cal. 2019) (quoting *Del Carmen Guadalupe v. Agosto*, 299 F.3d 15, 23 (1st Cir. 2002).  While Plaintiff must be given the benefit of every reasonable inference from the evidence, that does not include inferences based on guesses and speculation.  Here, Plaintiff has failed to present evidence, let alone clear and convincing evidence, showing that the standard for punitive damages under NRS § 42.007 is met.[2]

---

[2] Plaintiff additionally argues that "Defendant should not simply be allowed to hide behind the stipulation to escape punitive damages in this case." (Resp. MSJ 16:6–8).  Even assuming that Defendant is "hiding behind the

1

IV.    **CONCLUSION**

2        **IT IS HEREBY ORDERED** that the Defendant's Motion for Partial Summary

3   Judgment, (ECF No. 78), is **GRANTED**.

4        **IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss, (ECF No. 83), is

5   **GRANTED**.

6        **IT IS FURTHER ORDERED** that within twenty-one days of the entry of this Order,

7   the parties shall file a Proposed Joint Pretrial Order.

8        **DATED** this __23__ day of January 2023.

9

10   _____

11   Gloria M. Navarro, District Judge
     United States District Court

12

13

14

15

16

17

18

19

20

21

22

23

24

25

---

stipulation[,]" its ability to hide is only because Plaintiff willingly entered into a stipulation which hindered her ability to conduct discovery.  The position Plaintiff now finds herself in is one of her own creation.